**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------  X

**UNITED STATES OF AMERICA,**                    21- cr- 00254 (RPK)

                              **Plaintiff**

                 **-against-**

**HEATHER BUSCH,**
                              **Defendant**
---------------------------------------------------------  X

 

**SENTENCING MEMORANDUM ON BEHALF OF HEATHER BUSCH**

 

**Peter A. Crusco**
**Attorney at Law, P.C.**
8 Reeves Avenue
Farmingdale, N.Y. 11735
Email: pacrusco.attorney@gmail.com
Phone: (631) 559-6366
*Attorney for Heather Busch*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES                                                    2

I.    INTRODUCTION                                                      4

II.   THE 18 U.S.C. § 3553(A) FACTORS WARRANT A NON                     7
      INCARCERATORY PROBATIONARY SENTENCE.
      (a) Background and Personal History of Heather Busch.            8
          i.    Heather's Support and Love of Her Family               12
          ii.   Heather's Remorse and Contrition                       15
          iii.  Heather's Aberrant and Tragic Choice                   18

      (b) GUIDELINES CALCULATION AND RELEVANT                          20
          LEGAL AUTHORITY.

      (c) THE NEED FOR THE SENTENCE IMPOSED.                           25

      (d) A PROBATIONARY SENTENCE WOULD BE                             
          SUFFICIENT BUT NOT GREATER THAN                              
          NECESSARY TO MEET ALL OF THE GOALS OF 18                     29
          U.S.C. § 3553(A).                                            

      (e) RESTITUTION IS NOT APPLICABLE AND A FINE                     33
          IS NOT WARRANTED.

          CONCLUSION                                                   33

## TABLE OF AUTHORITIES

**Cases**

United States v. Booker, 543 U.S. 220 (2005)....................................................................

United States v. Cavera, 550 F.3d 180, 189-190 (2d Cir. 2008) ...................................

United States v. Crosby, 397 F.3d 103, 111-12 (2d Cir. 2005) .....................................

United States v. Faria, 161 F.3d 761, 762 (2d Cir.1998) ................................................

United States v. Gall, 128 S. Ct. 586 (2007).....................................................................

United States v. Greene, 249 F. Supp. 2d 262, 266 (S.D.N.Y. 2003)...........................

United States v. Ingram, 721 F.3d 35, 38 (2d Cir. 2013)................................................

Kimbrough v. United States, 552 U.S. 85, 96 (2007) .....................................................

Nelson v. United States, 129 S. Ct. 890 (2009)...............................................................

United States v. Nesbeth, 2016 WL 3022073, at *1 (E.D.N.Y. 2016)……………….

United States v. Stockdale, 2014 U.S. Dist. LEXIS 9165, *4 (EDNY 2014)…

United States v. Roberts, 2005 WL 1153757 at *5 (S.D.N.Y. 2005) .............................

**Statutes**

18 U.S.C. § 3553(a) ................................................................................

18 U.S.C. § 3553(a)(2)...........................................................................

**Sentencing Guidelines**

U.S.S.G § 2X1.1 ....................................................................................

U.S.S.G. § 2X1.11(a)..............................................................................

U.S.S.G. § 2C1.1(b)(1)...........................................................................

U.S.S.G. § 2C1 b3 .................................................................................

U.S.S.G. § 3E1.1 ...................................................................................

U.S.S.G. § 3E1.1(b)................................................................................

U.S.S.G. § 5E1.2……………………………………………………………………..

**Other Authorities**

Use of Guidelines and Specific Offense Characteristics, Guideline Calculation (UGSOC) based for Fiscal Year 2020 accessible at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/guideline-application-frequencies/Use_of_SOC_Guideline_Based.pdf

Public Hearing Before the U.S. Sent'g Comm. Current State of Federal Sentencing February 16, 2012, *Statement of Raymond Moore Federal Public Defender for the Districts of Colorado and Wyoming* accessible at https://www.fd.org/sites/default/files/criminal_defense_topics/essential_topics/sentencing_resources/defender_recommendations/statement-of-raymond-moore-before-ussc-hearing-on-current-fed-sentencing-2-16-12.pdf;

Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines: A Component of the Fifteen Year Report on the U.S. Sentencing Commission's Legislative Mandate, 12-13, Exh. 10 (2004) accessible at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf.

Celia Watkins and Nicole Hong, 3 NYPD Officers Charged in Bribery Scheme, May 11, 2021, accessed at https://www.nytimes.com/2021/05/11/nyregion/nypd-officers-arrested-bribes.html;

Zoe Jones, Three Former NYPD Officers Plead Guilty to Bribery, CBS News, Oct. 7, 2021, https://www.cbsnews.com/news/nypd-officers-tow-truck-scheme-bribery/;

Zak Failla, Three Former NYPD Officers Admit to Bribery Scheme, Daily Voice, Oct. 8, 2021, accessed at https://dailyvoice.com/new-york/greThrenburgh/news/three-former-nypd-police-officers-admit-to-bribery-scheme/817728/

# INTRODUCTION

We submit this memorandum on behalf of Heather Busch who is scheduled to be sentenced before this Court on February 17, 2022. As the Court knows, Ms. Busch, age 35, plead guilty to one count, count five of the Indictment, Conspiracy to violate the Travel Act in violation of 18 U.S.C. §§371 which plea was entered into pursuant to the terms of a plea agreement. Exhibit P, Plea MinutesTr. pg 7-8, 19-20.

On November 24, 2021, the Probation Department's Presentence Investigation Report ("PSR"), was filed. Subsequently the Probation Department filed two addendums, the first on Dec. 15, 2021, and the second on Jan. 26, 2022.

We address in this submission the relevant sentencing considerations set forth in 18 U.S.C. § 3553 (a) in an effort to assist the Court in viewing Ms. Busch's offense for what it is: a tragic lapse of judgment by an otherwise hard working, law- abiding and courageous police officer.

Ms. Busch volunteered directly out of the NYPD Police Academy for one of the toughest assignments, the NYPD Housing Bureau, which polices N.Y. City's public housing developments, in order to accomplish her career goal, to assist people who needed her help, and while doing so, she put her life on the line numerous times, being injured several times in the line of duty in an otherwise blemish-free twelve-year career. See Exhibit A, Personal Narrative; Exhibit O, List of Medical/On duty injuries.

Ms. Busch's criminal conviction is clearly aberrant conduct given her character and the person who is portrayed in the many letters of friends and family. Those letters portray a devoted loving partner and mother, a caring, reliable friend and neighbor who is always ready and willing to help. The character letters in support of this submission, reflect the significant and meaningful role that Heather Busch has played in the lives of her family and friends.

It would be impossible to include a letter from every individual Heather Busch positively influenced over the course of her life or, specifically, her NYPD career. Nevertheless, the letters which we submit paint a consistent picture of a respected, caring and selfless friend, and a dedicated and tireless daughter, sister and mother. The letters also demonstrate a guileless, well-meaning and kind person, whose misplaced loyalty to a deceitful friend who had become a father figure to her, and her tragic choices, bring her before this Court.

In pleading guilty, Ms. Busch immediately took responsibility for her wrongful conduct and admitted to her role and participation in the "tow truck scheme." As a consequence, she lost the job she cherished, the legacy and career path in the NYPD blazed by her great grandfather, Joseph Ryan, as well her father, Bob and her uncle, Jonathan, jeopardized her family's financial stability, and will never be able to participate in any law enforcement or licensed profession and a multitude of other employment options that as a convicted felon she will be barred from as collateral consequences. PSR ¶89; *See, generally*, *United States v. Nesbeth*, 2016 WL 3022073, at *1

(E.D.N.Y. 2016).

For all the reasons discussed below, we respectfully submit that, under all the circumstances a sentence of probation achieves adequate deterrence, and satisfies the other sentencing purposes set forth in 18 U.S.C. § 3553 (a).

In consideration of all the information set forth below, we respectfully submit a non-incarceration sentence is not only appropriate but warranted.

## I.     NATURE AND CIRCUMSTANCES OF THE OFFENSE

The PSR indicates that Robert Hassett and Robert Smith entered into a conspiracy as a result of which they received thousands of dollars of bribe payments in exchange for referring business to a towing company, contrary to NYPD's Direct Accident Response Program (DARP-) (the 'Tow Truck Scheme). PSR ¶¶ 4-8. The scheme halted for a time when Hassett was transferred to a desk assignment. Smith resumed the scheme without Hassett in late 2019. When Smith retired from the NYPD in March 2020, Smith recruited Ms. Busch to take his place introducing her to individual #1, an agent for the government. During the course of approximately 8 months Ms. Busch accepted less than $6,500 in bribes to refer car accidents business to individual #1 in violation of DARP.

On August 5, 2021, the Heather Busch pled guilty to count five of the indictment, conspiracy to violate the Travel Act, in that, or about and between March of 2020 and October of 2020 in the Eastern District of New York that she and

"…Robert Smith and others did knowingly and willfully conspire to use one or more facilities in interstate…commerce…with the intent to promote… and carrying on of one or more unlawful activities, specifically, … bribe receiving in the third degree in violation of New York law; and that [she] conspired to perform acts to promote… and carrying on of those unlawful acts." Exhibit A, Sent. Min., pages 7-8. She admitted to agreeing with another individual to steer vehicle accidents to a specific company instead of going through the DARP procedure, and in return she would be given cash left in a mailbox for her to pick up, and in doing so she referred at least one car to the tow service and utilized cellular phones to accomplish the conspiracy. Exhibit A, Sent. Min., pages 19-20.

## II.     THE 18 U.S.C. § 3553(A) FACTORS WARRANT A NON INCARCERATORY PROBATIONARY SENTENCE.

The 18 U.S.C. § 3553(a) factors that must be considered by the Court when imposing a sentence are as follows: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentences and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the U.S. Sentencing Guidelines; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar

conduct; and (7) the need to provide restitution to any victims of the offense. These factors are reviewed as below.

The nature and circumstances of the offense have been discussed above, and will not be repeated here except as they relate to the other § 3553(a) factors addressed below.

(a)    **BACKGROUND AND PERSONAL HISTORY OF HEATHER BUSCH**

The United States Supreme Court has observed that "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States,* 518 U.S. 81, 113 (1996).

Ms. Busch's personal narrative is attached as exhibit A, and included in the PSR. Ms. Busch is 35 years old, born in 1986 in Brooklyn. The family thereafter moved to Brentwood, Long Island. She comes from a hard working family that instilled in her the traditional values of hard work and family life. Her father, Bob, was a retired NYPD police officer who retired with an on duty knee injury, and her mother Ann is a registered nurse working in the home healthcare department. She has two younger sisters Emily and Shannon.

Life was not easy for the Busch family. Her father after retirement was on disability though he tried several jobs including as a bus driver, and an elevator inspector, but he was mostly a "stay at home dad" while her mother worked to support the family. She never lacked for necessities but money was "tight at times" and she was taught early on about financial responsibility. Ms. Busch learned to help the family, by cooking, cleaning, doing laundry and assisting with household repairs.

Ms. Busch also learned about basic home repairs from her father who she had a very strong bond with. She saved the family money by assisting her father and her sisters with such projects as replacing the roof, the cesspools, and repairing countless items around the house. She learned how to gut rooms and put up sheetrock, paint, install flooring, set electric panels and fix minor plumbing issues. She was always there learning and working along with her father which built a close bond. As a young teenager she learned about finances working at the mall with the understanding that half of her earnings would go toward household bills, and that she would be responsible for purchasing her own clothing. She describes that her parents were tough on her and her siblings. As the oldest she was directed to set the example for her younger sisters.

Ms. Busch knew she wanted to become a police officer as a child "to help people and make a difference in the world." Her father was a major influence in her decision. She looked up to him as a role model and appreciated the friendships and

comradery she observed first hand among his law enforcement friends, and the police groups he was involved with. She grew up "seeing this community of people that cared about each other, even if they had not known each other before and she admired it intensely." She savored listening to them tell funny and occasionally sad stories. The on the job stories of violent crimes and the matter of fact way they told the stories challenged her and she wondered if she could ever be that tough and hardened. To achieve her career goal, knowing that the NYPD accepted an associate's degree to enter the police academy, she attended Suffolk Community College, working two jobs as a waitress and at a department store to pay her way while contributing to the family expenses.

Ms. Busch studied diligently to pass the NYPD entrance exam and in 2009 received her appointment to enter the Police Academy accomplishing her childhood dream of becoming a police officer. Upon graduating the academy Ms. Busch specifically requested to be placed in public housing which was known to be dangerous and rife with violent crime as well as difficult to leave once placed.

Although her parents were disappointed with her choice of assignment, she knew that the domestic violence was prevalent in the NYCHA developments and she believed this was her path. She believed she had a calling to help those trapped in violent relationships as she had personally experienced that scenario not long before

joining the NYPD. She also confronted her own battles in the NYPD, with prevalent female stereotypes, and necessarily had to work even harder to prove her worth.

Ms. Busch made it a point during her career to go above and beyond what was expected of a police officer, often staying in touch with not only victims of domestic violence but also victims of other crimes. She freely shared her phone number and encouraged them to call her with questions or concerns.

During her career, Ms. Busch made over 100 arrests, and was extremely active. Her arrests were primarily for violent crimes including domestic abuse cases. While she was assigned to the Housing Bureau, the majority of her arrests were for trespassing, weapons possession, and domestic violence. She was often praised by her supervisors for her attention to detail, thorough reporting, and the most complaint reports per tour, meaning she answered more "jobs," that is, calls for assistance than any other officer. The letters in support of her indicate that Ms. Busch was not one to seek the limelight or accolades. She was satisfied with doing a good job and helping people. Ms. Busch did acknowledge that in 2021, for performing CPR and reviving a man she found at a motel involved in a domestic violence matter, the Precinct commanding officer, Captain Pinkhasov, awarded her the commendation, "Officer of the month". Exhibit A, Personal Narrative. She also revived an infant using CPR who was injured in an overturned vehicle accident. Exhibit H, Letter of Emily Busch.

Heather's mother, Ann Busch, in her letter to the Court, exhibit B, provides some insight as to why Heather requested assignment to the NYPD Housing Bureau:

> When Heather entered high school she became involved in an extremely toxic and abusive relationship. While this was without a doubt a horrible and traumatic experience for her, it was also a major factor in her decision to request a position working for the NYPD'S housing bureau where she knew she would be able to work with and help the victims of domestic abuse.

And, Ann Busch further writes, exhibit B:

> It was abundantly clear that she cared deeply for the community that she served, often staying in touch with victims of domestic abuse and staying late at work to ensure that people in need got the help that they required even as it caused her to miss time away from her own family.

In fact, Heather Busch put her life on the line many times as a police officer demonstrating her deep concern for the community. We underscore the Probation Department's report which states that she "…as a police officer with the NYPD honorably and faithfully, …put herself in harm's way to protect and serve…" PSR ¶91. In fact her career included several occasions that she put her life on the line to protect New Yorkers, and was injured. *PSR ¶¶55-57, 91.* As more fully detailed in the attached exhibit O, Ms. Heather was injured on at least five occasions while on duty, protecting the public:

2012 – Dispersing an unruly crowd, injury to hand;
2015 – RMP auto accident, injury to neck and back;
2015 – Arresting a violent male wanted for significant domestic abuse, injury to leg and back;
2017 – Restraining a suicidal female, injury to knee.
2021 – Restraining an armed felon, injury to leg and hip.

Heather Busch's long -term friend, Tiffany LaVardera, opined in her letter to the Court, exhibit G, concerning Heather's helpful nature:

> Helping was something Heather grew up wanting to do with her time. Her passion for helping led her to join the Police Department. For the past 10 years, Heather has had a reputable and admired career. She has managed to help her community

stay safe, all while raising her two amazing children.

Heather Busch's request for assignment to the Housing Bureau where she believed she could make a difference in people's lives was in character with Heather's nature given the family environment in which she was raised, with parents who instilled in her the traditional values and benefits of hard work, and supporting your family.

### (i)    Heather's Support and Love of Her Family

Heather's support and love of her family are reflected in numerous letters attached to this Sentencing Memorandum:

In particular, with respect to her support of her mother after the death of her father, Ann Busch, stated, exhibit B:

> Heather is a very loving and supportive mother, friend and daughter. She was my main source of support when my husband died 5 years ago, and we were of great support and comfort to each other.

Heather Busch's caring and compassionate nature was demonstrated as a young girl, helping her mother after her father's injury and nurturing her sisters, as explained by her mother, Ann Busch:

> When she was about 7 years old, my third daughter was born. My husband was at that time out of work after suffering a knee injury and retiring from the NYPD. It was a struggle for him to be home with three very young girls, one of which was a newborn when I returned to work. Heather became a second mother to her sisters, she would help with cooking, cleaning, laundry, and watching her sisters. Every night she told them bedtime stories. She helped my middle daughter Emily with school work and tutored Shannon when she struggled with learning to read.

Heather Busch's younger sister Shannon explains how Heather helped her with her learning disabilities become interested in books by reading to her, using the Harry Potter books. Years later, when Shannon, as an adult became very ill, Heather was there for her transporting Shannon to doctor's appointments and helping with her

errands, keeping Shannon's spirits positive, while juggling caring for her own children, hhhhhhhhhhhhhhhhh.

Doreen Crinigan, Heather's aunt and godmother who has known Heather all her life, describes Heather as a compassionate, generous and kind person who is the backbone of their family. Heather is active in her community, volunteering for her son's Boy Scout Troop, a "dance mom," coordinating for her daughter's backstage dance performances, and school lunch mom. She states that Heather is devoted to her children and they are devoted to her. Ms. Crinigan has had "heart to heart" discussions with Heather and knows that Heather deeply regrets her conduct. She adds that, [i]t would be detrimental to all of us, especially her children, for Heather to go to prison since she plays a major support role in our family." Exhibit l.

Heather Busch cherishes her time with her children ppppppppppppp. She is devastated that her misconduct puts in jeopardy her relationship and the time she may have with them. In Heather's own words from her personal narrative, exhibit A:

> To say that my children are my life would be an understatement. They are more important to me than words can describe. My son pppppp loves looking up from his soccer games to see me cheering for him. He tells me every night when I tuck him into bed that I'm his best friend. He struggles with attention issues and requires constant assistance with tasks like homework and staying on task. My daughter pppppp is sensitive and sweet. She loves to practice her dance recital moves together and she can't fall asleep unless we have snuggled up to read a chapter from Harry Potter together. My single greatest fear is that my children will need me and that I won't be there to help them with homework or comfort them when they are sad. That they will look for me and I won't be there for them.

Her mother, Ann Busch, describes Heather's care for her children. Ann Busch stated:

Heather is an exceptional mother. Her son ███████ age ██ has both attention and behavioral issues and requires consistent supportive and loving care. She has endless patience with him and helps to keep him on track with a consistent schedule. Her daughter ██████, age █ is a sweet and loving little girl who relies on her mother deeply. I am very concerned for the children's ability to thrive in the absence of their mother.

Exhibit B.

Josephine Robledo, a retired public school teacher, a neighbor who resides in close proximity to Heather, and who has known Heather all her life, and a close friend of Heather's aunt, Doreen Crinigan, states with respect to Heather as a mother, exhibit E:

> She is a considerate, kind, and selfless mother: always going somewhere or doing something with her children; park, nature preserve, beach, library, boy scouts, dancing school. It would clearly be damaging to her children if Heather was sent to prison.

And Gina Goldberg, Heather's close friend, exhibit D, explains:

> I have known Heather for her entire life. I have watched while she has grown into her roles as daughter, sister, niece, mother, aunt, friend, and police officer. She followed her dad into the NYPD and has been a constant support to her family since his death. She is a devoted mother to her two young children. Her true kindness can be seen in her interactions with her children. She is a supportive and devoted mother that strives to provide her children with the best life possible. Heather has expressed deep contrition for her actions. Knowing Heather, I am sure she will be able to rise above this situation and continue to be a productive member of society.

## (ii)     Heather's Remorse & Contrition

Heather's sister, Shannon Busch, shares Heather's intense remorse and contrition in her letter, exhibit C, to the Court:

> Every spare moment that Heather has is centered around spending time with her children, nurturing and caring for them. Heather has expressed to me many times her remorse and regrets over her actions and in my opinion she had taken full responsibility for them and would never again place herself in a similar situation. Her greatest concern is that in facing the consequences involved, her children will greatly suffer in her absence. I cannot express how important Heather is to our

family. I have never seen her so distraught or frustrated with herself as she has been these past few months. I believe that the long term effects of her actions are present in her mind daily and weigh heavily on her.

As Gina Goldberg, explained in her letter, Exhibit D, Heather has "expressed deep contrition for her actions." She readily and early in the case pled guilty. Heather has expressed to family and friends the deep remorse she feels, and shown her remorse. See, also letter of Tiffany LaVardera, exhibit G, and Catherine Shine, exhibit M.

In her letter to the court, Josephine Robledo, who has known Heather all her life, as a close friend to her aunt Doreen Crinigan, further states, exhibit N:

> I was stunned when I heard about her arrest. This was completely out of character for her. Heather has always been a frank and candid person. Heather is truly sorry for what she has done. Which is why I am writing this letter in support of her. I am aware of the seriousness of her case, but I am hoping the court will show some mercy.

Similarly, Gina Goldberg, exhibit D, writes:

> I was shocked to hear of Heather's situation, but proud that she has taken responsibility for her actions. She has always been a very credible and reliable person. On account of this I am writing this letter in her defense. I am aware of the gravity of this case, however, I am hoping that the court will show her some compassion… Heather has expressed deep contrition for her actions. Knowing Heather, I am sure she will be able to rise above this situation and continue to be a productive member of society.

Alaina Bakewicz, a family friend of Heather Busch who has known Heather all her life, and her nephew Victor's godmother, in her letter to the Court, exhibit F, states:

> She has been a commendable daughter, sister, niece, mother, aunt, and friend. I have enjoyed watching Heather grow into a wonderful young woman and a caring mother to her two young children, ppppppppppppppp Heather has been a godsend to her mother since the sudden death of her father in 2016. While I was surprised to hear about the offense, it comes as no surprise that she is ready to

accept responsibility for it. Heather has expressed deep remorse for her actions. I believe that moving forward, she will learn from her mistakes and emerge as an active and caring member of society.

Lori Bilboa, a close friend of Heather writes in her letter to the court, exhibit J:

While I was shocked to hear about the offense, it comes as no surprise that she is taking responsibility for it. Heather has expressed deep repentance for her actions and in the future. I know Heather will rise above this and continue to be an asset to society.

Further, Heather's close friend of more than twenty years, Tiffany LaVardera provides, in her letter to the Court, exhibit G:

I know that Heather is deeply remorseful for what she has done. If she has to go away, it will be devastating to her family, especially her kids. Her kids are her world and she loves being a mother to them.

Emily Busch, Heather's youngest sister writes, exhibit H:

When I asked Heather to tell me about the circumstances surrounding her arrest, she told me clearly that she had made a bad decision that violated her own ethical standards as well as the standards held to her as a police officer. She shows extreme remorse and has not made any excuses for her actions beyond giving the circumstances behind her poor choice. I ask you to please carefully consider her lifetime of good choices and her life saving actions during her employment as a police officer against the bad decisions that placed her in the position she is in today.

Heather comes from a law enforcement family background. Her great grandfather, Joseph Ryan, her father, and uncle were members of the NYPD. Exhibit I, letter of Jonathan Busch; Exhibit M, letter of Catherine Shine. The shame, embarrassment and stigma are even more profound in such a family that respects and honors all law enforcement careers. Heather's domestic partner, Kevin Shea, is also a police officer, a Lieutenant in the NYPD. Heather's paternal uncle, Jonathan Busch, a retired Transit police officer, like her father, writes, Exhibit I:

Heather is well aware of the shame and embarrassment she has brought upon her Department, her City, her Family, and her Legacy.

Ms. Busch acknowledges her criminal conduct and expresses her shame and remorse in her personal narrative:

I felt then and still feel an immense amount of guilt. I think constantly about the stupidity of my decision and the betrayal I feel that I have made not just to the NYPD but also to my family. I feel an immense amount of shame and regret for the profoundly poor choices that I made and recognize that I alone am responsible for them. I recognize that I have violated my oath as a police officer and tarnished the shield I wore as well as undermined the work of all police officers. I have brought disgrace to my family and hurt them personally and financially.

### (iii)    Heather's Aberrant and Tragic Choice

Heather progressed in the NYPD while raising her two children, her son █████ and daughter ████████ now ages ██████ and ███████ respectively. After approximately five years of assignment to the Housing Bureau, she was transferred in 2015 to the 105 Precinct in Queens County. She was assigned to the 105 Precinct in south eastern Queens County, from 2015 to 2021, approximately the last six years of her career.  As a uniformed police officer in the patrol section, she was very active making numerous arrests.

At the 105 Precinct, she was given a schedule more conducive to raising her family and sharing the duties with her domestic partner, Kevin Shea, a Lieutenant in the NYPD, who worked nights and weekends. At the 105 Precinct, she worked with colleague, Robert Smith, who was also a veteran of the Housing Bureau. As a more

senior police officer, Smith became her mentor. After the death of her father in 2016,

Smith on occasion assisted Heather's mother with home projects. Ms. Busch in her

personal narrative provides:

> While coming to the 105 was a drastic change, not all of it was for the better. I found myself relearning how to do my job on the fly because patrol is substantially different from housing. One of the most challenging things was leaving behind the friendships I had made and starting again in a place where everything and everyone was new. One of the first friendships that I made during this adjustment was Robert Smith. Smith had also, like me, worked in housing and understood how hard the transition could be, our children were around the same age and he often gave me advice or steered me in the right direction when I was unsure about what to do on the job. Smith supported me in every challenge I faced on the job, and became a father -figure to me.

> Just over a year after coming to the 105 my family was dealt a devastating blow, my father had suddenly and unexpectedly passed away at the age of 53. This left a huge void in my life and I relied heavily on my NYPD family to get through this difficult and upsetting time. Smith was very helpful to me during this time. I had often told him in the past of how much he reminded me of my father. Frequently, when I told him about how my mother needed help with a home repair that I couldn't do on my own, he volunteered to help me fix it. I felt indebted to Smith that he would go out of his way to be so kind to me and my family.

Unfortunately, in 2020, when Robert Smith approached Ms. Busch with the

tow-truck scheme, Heather made a choice that was both aberrant given her character

and family history, and tragic. She agreed to get involved in Smith's ongoing tow truck

-DARP conspiracy. To give some context to her conduct, and not as an excuse,

Heather was blinded by loyalty to Smith, a colleague in whom she misplaced her trust,

and whom had become a father figure after her father's death. Ms. Busch describes

her decision making process in her personal narrative:

> In 2020, when Smith first approached me and asked me to begin steering vehicles from vehicle accidents I was torn. I knew that it was wrong and that it went against my personal morals as well as the ethics of the oath that I had taken as a police officer. I also felt the pressure of turning down

my father figure and disappointing someone that I held in high esteem. I understand now that my father figure in the end betrayed me, because my real father would never have encouraged me to go in harm's way.

Kevin Shea, describes in his letter to the court, exhibit N, how out of character Heather's conduct was and how "mortified" he was to hear of the accusations against her.

Smith recruited Heather to fill his role in the tow truck scheme after he retired from the NYPD, and to make some money from his referral and the continuation of the scheme. Thinking that her request for transfer out of the 105 would occur and she would not have to act on her agreement with Smith, she agreed to become part of the tow truck scheme. Once her transfer out of the 105 Pct. did not materialize, Heather believed she had no other choice than to follow through on her promise. She made a tragic decision.

As her mother, Ann Busch, opined of Heather's ill-fated choice, exhibit B:

> I believe that Heather felt an immense pressure from someone she considered a friend and role model and made her decision under the impression that it was the best way to appease the individuals that approached her while believing that she would be leaving her current area of work and placed in a position where she would no longer be required to fulfil any promises made to them. Unfortunately, she did not know how to effectively extricate herself from these individuals and the auspicious situation she found herself in.

*See also*, exhibit M, letter of Catherine Shine. After her arrest, Ms. Busch immediately acknowledged her offense, and voluntarily, readily and early in the case pled guilty, acknowledging her conduct. Further, in a first step effort at redemption, after fully admitting her offense, pleading guilty, and in order to try to remedy her family's significant financial loss in some small way, with the loss of her career, Heather immediately sought out other employment and obtained an hourly job to try to help

her family defray some expenses.

## III.   GUIDELINES CALCULATION & RELEVANT LEGAL AUTHORITY

The crime for which Ms. Busch pled guilty, Conspiracy to violate the Travel Act, 18 U.S.C. §371 carries a maximum sentence of five years under the law and no mandatory minimum period of incarceration. As per the Probation Department's Second Addendum to the PSR, in applying the advisory Sentencing Guidelines (as of Nov. 1, 2018), the Probation Department and the United States Attorney's Office have calculated a total offense level of 17, which carries a range of imprisonment of 24 to 30 months for the defendant who falls within Criminal History Category I, a first time offender. PSR Second Addendum, p.1.

A summary of the guideline's calculation appears below, detailing the applicable levels and the computations made by both the U.S. Probation Department and the United States Attorney's Office as per the second addendum:

### GOVERNMENT'S GUIDELINES CALCULATION

| USSG §§ | DESCRIPTION | Level |
|---|---|---|
| 2X1.1/ 2X1.1.1(a), 2C1.1(a)(1), 2C1.1(a)(1) | Base level | 14 |
| 2C1.1(b)(1) | More than one bribe, two level increase | +2 |
| 2C1.1(b)(3) | Public official in sensitive position | +4 |
| | Victim Related Adjustment | 0 |
| | Adjustment for Role in the Offense | 0 |
| | **Adjustment for Obstruction of Justice** | **0** |
| | **Adjusted Offense Level** | **20** |

| | **Chapter Four Enhancement** | 0 |
| 3E1.1 | Acceptance of Responsibility | -2 |
| 3E1.1(b) | Government notification that the plea was timely | -1 |
| | Criminal History= 0 | |
| | Total decrease | -3 |
| | | |
| | Total Offense level | 17 |
| | This level carries a range of imprisonment of 24 to 30 months. | |

It is noted that the U.S. Attorney's Office calculation detailed in defendant's plea agreement dated August 5th, 2021, was six months less in the estimated calculation. It indicated an estimated adjusted offense level of **15** which carried a range of imprisonment of **18 to 24 months.** As part of her plea agreement with the Government, defendant agreed not to dispute the Government's Guidelines calculation. *See,* Plea Agreement, ¶2, "The defendant stipulates to the above Guidelines calculation."

Nevertheless, defendant did reserve her right to argue at sentencing that a below Guidelines sentence is most appropriate as per 18 U.S.C. §3553. The U.S. Attorney' Office plea agreement calculation was premised on a base level of 14, a two level enhancement for more than one bribe, an additional two level enhancement (later determined by the U.S. Attorney's Office to be in error) for the value of the benefit of in excess of $6,500 for a total of 18. There were then adjustments for acceptance of responsibility (-2) and timely plea (-1), for an adjusted offense level of **15.** This level carries a range of imprisonment of 18 to 24 months.

## **Application of Guidelines: Relevant Legal Authority**

A district court should "ordinarily 'begin all sentencing proceedings by calculation of the applicable Guidelines range.'" *United States v. Preacely*, 628 F.3d 72, 79 (2d Cir. 2010) (citing *Gall v. United States*, 552 U.S. 38, 46 (2007)). However, calculation of a defendant's advisory Guidelines does not end the Guidelines' analysis. Rather, because "[t]he fact that a given Guidelines range may apply does not always mean that it should." *United States v. Ingram*, 721 F.3d 35, 38 (2d Cir. 2013) (Calabresi, J, concurring); 18 U.S.C. § 3553(a); *United States v. Cavera*, 550 F.3d 180, 189-190 (2d Cir. 2008); *United States v. Crosby*, 397 F.3d 103, 111-12 (2d Cir. 2005).

Thus, although the Guidelines are an important factor in the sentencing analysis, they are advisory and the Court is generally free to impose a non-Guidelines sentence. *United States v. Gall*, 128 S. Ct. 586 (2007); *United States v. Booker*, 543 U.S. 220 (2005). A sentencing court must consider what weight to accord the Guidelines in its assessment of all the 3553(a) factors.

Thus, while the Guidelines must be considered by the Court, it is not an abuse of discretion for a court to vary from the Guidelines sentence even in a run-of-the-mill case based solely on policy consideration, or because a specific guideline fails to reflect § 3553(a) considerations, or fails to incorporate defendant characteristics, or is not based on empirical evidence, or is not based on national experience. See,

*Kimbrough*, 552 U.S. at 96; Gall, 552 U.S. at 46 & n. 2; *Nelson v. United States*, 555 U.S. 350 (2009).

In short, the sentencing court may not halt the sentencing analysis after its consideration of the Guidelines but rather must consider all the remaining 3553(a) factors and consider whether a variance from the advisory applicable Guidelines range is warranted in light of the other sentencing factors. *See, Cavera*, 550 F.3d at 189. Thus, the advisory Guideline calculation is not complete until the sentencing court considers the application of downward departures. *Ingram*, 721 F.3d at 38 (Calabresi, J., concurring).

Federal courts consider both the offense and the offender when imposing judgment. See 18 U.S.C. § 3553(a) (directing sentencing courts to consider "the nature and circumstances of the offense and the history and characteristics of the defendant"); *See, e.g., United States v. Rioux*, 97 F.3d 648, 663 (2d Cir. 1996) (affirming 10-level downward departure and sentence of probation, with a special condition of home confinement, in part due to the defendant sheriff's charitable fundraising); *United States v. Nesbeth*, *supra* ( a non-incarceration sentence to the defendant, a "drug courier," who faced up to a 41 month Guidelines range, in part due to the collateral consequences that would subsequently affect her life as a convicted felon; the range of subject matter that collateral consequences cover can be particularly disruptive to an ex-convict's efforts at rehabilitation and reintegration into society).

The Courts in *Rioux*, and *Nesbeth*, for instance, determined that significant departures from the Guidelines were appropriate. It is submitted that those matters did not involve a defendant such as Heather Busch who chose to place her life in jeopardy to protect her community on a daily basis and as a result was injured on duty on several occasions.

Although the Government's advisory Guidelines calculation, a total offense level of 17, carrying a range of imprisonment of 24 to 30 months' imprisonment, the defense asks the Court to impose a non-incarceration sentence. This request is made in light of a number of factors detailed below including the significant impact her crime has already had on Ms. Busch, and on her family, her blemish free career excepting the crime at bar, her unique family circumstances, and her genuine, early and ready acceptance of responsibility, and all the other reasons stated.

In determining an appropriate sentence, the sentencing court is directed to "impose a sentence sufficient but not greater than necessary, to comply with . . . the need for the sentence to: (A) reflect the seriousness of the offense, promote respect for the law and provide just punishment for the offense, (B) afford adequate deterrence to criminal conduct; (C) protect the public from further crimes of the defendant; and (D) provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

It is respectfully submitted, that once the court considers the Guidelines in light of all the remaining 3553(a) factors, the court will discern that a variance from the advisory Guidelines range is warranted in light of the other sentencing factors. *See, Cavera*, 550 F.3d at 189.

IV.     **§ 3553(A):  The Need for the Sentence Impose**

It is respectfully submitted that the advisory Guidelines calculation of 24 to 30 months' imprisonment, is not warranted in these circumstances. A probationary sentence is an appropriate sentence "sufficient but not greater than necessary, to comply with . . . the need for the sentence as per the factors specified in 18 U.S.C. § 3553(a)(2).

The prosecution has already had a devastating and punitive impact on Heather Busch's life that are directly relevant to her sentencing. Among the consequences, Ms. Busch had to leave her chosen career path as a police officer that she cherished from her youth and continuing the family legacy, following in her grandfather, father's and uncle's footsteps. Her departure from the NYPD was even more devastating because she left it in disgrace. Her reputation was eviscerated, her status in the community that was buoyed with her volunteer work in the Boy Scouts, as a school and lunch mom, and the girl's dance club that she so enjoyed, and was so much a part of her life with her son and daughter was gone overnight.

Heather's criminal conduct has not only altered her life's course forever, but has affected her and her family's financial stability. Indeed, the Probation Department acknowledges that "[b]ased on defendant's financial profile, and forfeiture obligation, she does not appear able to pay a fine . . ." PSR ¶ 76.

Her domestic partner, Kevin Shea, exhibit N, makes clear the emotional and financial impact on their family of Heather's offenses:

> I will struggle with this for the rest of my life. The negative impact has been profound. The rest of my life will continue to be negatively affected by the fact Heather is no longer a Police Officer. Heather can no longer protect my children as I would like. My family can no longer have the stability in various ways that a public sector job can bring. I have lost trust in her to look after the best possible outcomes for anything regarding my children.

Further, as previously stated, the collateral consequences of being a convicted felon result in their own additional punishment on Heather Busch. PSR at ¶ 89. The impact of the collateral consequences of Ms. Busch's conviction are significant. After putting her life on the line for the public for twelve years she is forever barred from the career that gave her so much satisfaction. Her employment options are limited. She cannot capitalize on her twelve years of service to the city in any role that requires a background check such as a public employee, private investigator, security officer, or teacher or any other position required to be licensed by a government that bars convicted felons.

Moreover, in addition to the general reluctance of private employers to hire ex-

convicts, felony convictions disqualify individuals from holding various positions. Under federal law alone, a felony conviction may render an individual ineligible for certain federal benefits including, among others, student loans, food stamps and tax credits.

Further, the mental anguish she has suffered and continues to suffer for her acts is increased by an overwhelming fear of separation from her two children, who she cherishes beyond words. She has never-ending questions of the consequences that separation will have on them in the foreseeable future. Ms. Busch knows this has been all caused by her own actions.

Ms. Busch's family circumstances are part of her history and characteristics. *See*, *United States v. Roberts*, 2005 WL 1153757 at *5 (S.D.N.Y. 2005) (granted time served in consideration of defendant's role as the sole care-taker of chronically ill partner).

Therefore, we respectfully request that the Court consider Ms. Busch's family responsibilities and the impact of her absence on her children at sentencing. The Second Circuit has recognized that the intended beneficiary of a family circumstances departure is not the defendant but the dependents. *United States v. Greene*, 249 F. Supp. 2d 262, 266 (S.D.N.Y. 2003). Thus, sentencing courts focus on the vulnerability of these dependents, assessing the hardships that a sentence of incarceration would impose on them. *See*, *United States v. Faria*, 161 F.3d 761, 762 (2d Cir.1998).

Lastly, there is no need for incarceration in order to protect the public from any future crimes. Given that the consequences that Ms. Busch's conduct, and the

prosecution has taken on everyone whom she holds dear, her risk of recidivism is clearly non-existent. Heather Busch is not likely to risk their wellbeing ever again.

Moreover, a jail sentence would punish and further devastate Heather's family. As her close friend, Tiffany LaVerdara, opined in her letter to the Court, exhibit G:

> For the past 20+ years, Heather has shown me friendship, compassion and what it means to be a good person. I know that Heather is deeply remorseful for what she has done. If she has to go away, it will be devastating to her family, especially her kids. Her kids are her world and she loves being a mother to them.

The impact on the children of a jail sentence is also discussed by Kevin Hyland, exhibit K. Heather's youngest sister, Emily Busch opines, exhibit H:

> Heather has two children, ████ is █ and full of boundless energy. Heather balances this by keeping him busy with soccer practice and a lot of patience. ████████ has a hard time with concentrating, especially with school and homework. He relies very heavily on his mother to stay on task. ████████ will soon be ██, she is shy and quiet. She loves to dance but will only go to class if Heather brings her and watches her as she goes in. I know that Heather reads with both children every night even if it means extending bedtime so that after a busy or difficult day they both feel special and get to spend quality time together. Heather is the primary caretaker for the children as their father works nights.

Moreover, as detailed above and in exhibit O, Heather Busch put her life on the line many times as a police officer demonstrating by her actions her deep concern for the community. The defense underscores the Probation Department's report which states that she "…as a police officer with the NYPD honorably and faithfully, …put herself in harm's way to protect and serve…" Moreover, the PSR continues: "Her significant service is a mitigating factor for the Court to consider at sentencing." PSR ¶91.

# V.  A PROBATIONARY SENTENCE WOULD BE SUFFICIENT BUT NOT GREATER THAN NECESSARY TO MEET ALL OF THE GOALS OF 18 U.S.C. § 3553(A).

We respectfully submit that a period of probation is appropriate punishment in this case. The sentence of probation would satisfy the four goals of sentencing. "Offenders on probation are . . . subject to several standard conditions that substantially restrict their liberty." *Gall v. United States*, 552 U.S. 38, 48 (2007). As *Gall* summarized, "Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. U.S.S.G § 5B1.3. Most probationers are also subject to individual "special conditions" imposed by the court." *Gall,* 552 U.S. at 48.

Heather Busch has already suffered the consequence of her action. A probationary sentence would provide adequate specific and general deterrence. It is clear by Heather's response to her misconduct that she will never commit another crime. She admitted her crime and has endeavored to move forward with her life. She had has had ample time to reflect on the seriousness of the offense as well as plan for her future. She undoubtedly will be deterred from ever committing another crime again.

With respect to the third goal of sentencing, it is submitted that there is no need for incarceration of Heather Busch in order to protect the public from any future crimes. Ms. Busch's risk of recidivism is slim to none. She recognizes the toll that her prosecution has taken on everyone whom she holds dear and is not likely to risk their wellbeing ever again.

It is well documented that an offender with strong family ties and responsibilities poses a low risk of recidivism. *See*, Public Hearing Before the U.S. Sent'g Comm. Current State of Federal Sentencing February 16, 2012, *Statement of Raymond Moore Federal Public Defender for the Districts of Colorado and Wyoming* accessible at [https://www.fd.org/sites/default/files/criminal_defense_topics/essential_topics/sentencing_resources/defender__recommendations/statement-of-raymond-moore-before-ussc-hearing-on-current-fed-sentencing-2-16-12.pdf](https://www.fd.org/sites/default/files/criminal_defense_topics/essential_topics/sentencing_resources/defender__recommendations/statement-of-raymond-moore-before-ussc-hearing-on-current-fed-sentencing-2-16-12.pdf); Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines: A Component of the Fifteen Year Report on the U.S. Sentencing Commission's Legislative Mandate, 12-13, Exh. 10 (2004) accessible at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf.

With respect to general deterrence, we respectfully submit that a probationary sentence and the collateral consequences of conviction, including loss of career, the attached stigma, and preclusion from many employment options, are sufficient to deter any individual, particularly a law enforcement officer, from committing future

offenses. Ms. Busch's arrest and that of her co-defendants garnered a certain amount of publicity which as indicated by her domestic partner, Kevin Shea, has caused the family much grief. *See, e.g.,* Celia Watkins and Nicole Hong, 3 NYPD Officers Charged in Bribery Scheme, May 11, 2021, accessed at https://www.nytimes.com/2021/05/11/nyregion/nypd-officers-arrested-bribes.html; Zoe Jones, Three Former NYPD Officers Plead Guilty to Bribery, CBS News, Oct. 7, 2021, https://www.cbsnews.com/news/nypd-officers-tow-truck-scheme-bribery/; Zak Failla, Three Former NYPD Officers Admit to Bribery Scheme, Daily Voice, Oct. 8, 2021, accessed at https://dailyvoice.com/new-york/greThrenburgh/news/three-former-nypd-police-officers-admit-to-bribery-scheme/817728/.

   With respect to the fourth goal of sentencing, we respectfully submit that Heather Busch is not in need of any services that a correctional institution could provide more expeditiously or cost-effectively than she could herself. Instead, incarcerating her would only deprive her of the ability to take care of her children, and to serve her community.

   Further, a sentence of home confinement would restrict her freedoms yet also allow her to care her children. Any rehabilitation efforts would be better served with Ms. Busch released from incarceration. Therefore, a sentence of probation would be

sufficient, but not greater than necessary in this case to meet all of the sentencing goals of 18 U.S.C. § 3553(a) and would be appropriate in this case.

With respect to the other categories under 18 U.S.C. § 3553(a), any pertinent policy statements, and the need to avoid unwarranted sentencing disparities as per subdivisions (e) and (f): USSG §2C.1.(a)(1)(base level 14- defendant was a public official) indicates that the Guidelines were only applied 47.5% of the time and where the value of the payment or loss was less than $6,500, as in this case, the Guidelines were only applied 34.8% of the time. *See*, UGSOC pgs 24 and 77. The "Use of Guidelines and Specific Offense Characteristics, Guideline Calculation (UGSOC) based for Fiscal Year 2020 accessible at

https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/guideline-application-frequencies/Use_of_SOC_Guideline_Based.pdf.


## VI. RESTITUTION IS NOT APPLICABLE AND A FINE IS NOT WARRANTED.

The plea agreement indicated that restitution was not applicable. The PSR indicates that restitution is not appropriate. Defendant per her plea agreement has agreed to pay forfeiture of six thousand dollars. The defendant's conduct resulting in this prosecution against her have forever altered her life's course, and affected her and her family's financial stability. Indeed, the Probation Department acknowledges that

"[b]ased on defendant's financial profile, and forfeiture obligation, she does not appear able to pay a fine . . ." PSR ¶ 76.

Under the advisory guidelines, USSG §5E1.2 ("fines for individual defendants) subd. (a) provides that "The court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." It is submitted that any fine would place an unnecessary additional burden on the defendant and her dependents. See, USSG § 5E1.2(d)(3). *See also, United States v. Stockdale*, 2014 U.S. Dist. LEXIS 9165, *4 (EDNY 2014, Wexler,J.)

## VII. CONCLUSION

We respectfully submit that in light of the particular history, and characteristics of Heather Busch, her otherwise blemish free life, her significant police officer service to the public for twelve years, her sincere remorse and contrition, the catastrophic collateral personal and financial consequences she and her family have already suffered, and will continue to endure, and that will impact them for the foreseeable future, and for the care and development of her two vulnerable children who need her, that for all the foregoing reasons, we respectfully submit a sentence of probation would be sufficient, but not greater than necessary to meet all of the goals of 18 U.S.C. § 3553(a) and would appropriately temper justice with mercy in this case.

Thank you for your consideration of this submission on behalf of Heather

Busch.

Dated:  Farmingdale, New York
          February 3rd, 2022

                                        Respectfully Submitted,

                                        **Peter A. Crusco**
                                        **Attorney at Law P.C.**

                                        *Peter A. Crusco*
                                        _____

                                        *Attorney for Heather Busch*

CC: All counsel (via ECF)