

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

RCH:NJM
F. #2019R00206

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

February 10, 2022

**To be filed in redacted form**

By ECF

The Honorable Rachel P. Kovner
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Heather Busch
                 Criminal Docket No. 21-254 (RPK)

Dear Judge Kovner:

      The government respectfully submits this letter in advance of sentencing in the above-referenced case, scheduled for February 17, 2022, at 2:00 p.m. The defendant previously pled guilty under 18 U.S.C. § 371 to conspiring to use instrumentalities of interstate commerce to engage in Bribery in the Third Degree and Bribe Receiving in the Third Degree, contrary to New York Penal Laws §§ 200.00 and 200.10, respectively. For the reasons set forth below, an incarceratory sentence is appropriate in this case.

      I.      Background

      The defendant Heather Busch was a New York City Police Department ("NYPD") officer from 2009 until after her arrest in 2021. See Presentence Investigation Report, dated November 24, 2021 ("PSR") ¶ 67. While an NYPD officer in the 105th Precinct in Queens, New York, the defendant accepted approximately $6,000 in bribes for steering damaged vehicles to a specific tow trucking and automobile repair business (the "Business"), in contravention of the NYPD's Directed Accident Response Program ("DARP").

      Beginning in approximately September 2016, co-defendant and then-NYPD Officer Robert Smith, working with then-NYPD Officer Robert Hassett, engaged in a corrupt scheme whereby, after responding as NYPD officers to automobile accidents, they would steer

damaged vehicles to the Business in lieu of administering DARP (the "Tow Truck Scheme"). PSR ¶ 6. In exchange for their participation in the Tow Truck Scheme, Smith and Hassett received thousands of dollars in cash bribe payments from Individual No. 1. Id.

Following his retirement from the NYPD in March 2020, Smith recruited the defendant to participate in the Tow Truck Scheme. PSR ¶ 8. He introduced the defendant to Individual No. 1, having already told Individual No. 1 that he believed that Busch would be a good fit for their criminal scheme. PSR ¶¶ 7-8. According to recordings of the meeting, Smith told the defendant that she would make so much money as part of the Tow Truck Scheme that she would feel guilty. After Smith's introduction, the defendant began steering vehicles damaged in automobile accidents to the Business in exchange for cash bribe payments as part of the Tow Truck Scheme. Id.

At a meeting in March 2020, the defendant met with Smith and Individual No. 1 in Individual No. 1's car. During that meeting, Individual No. 1 provided the defendant with the key to a UPS mailbox and with $1,500. See PSR ¶ 8.

Thereafter, the defendant coordinated with Individual No. 1 regarding whether there were cars that she could potentially steer to the Business. After several false starts, she ultimately referred vehicles to Individual No. 1 on approximately seven occasions and received cash bribes at the UPS mailbox to which she had a key, approximately $1,000 at a time. First Addendum to the PSR ¶ 8.

II. Sentencing Guidelines Calculation

The government agrees with the Guidelines calculation of the total offense level as calculated in the Second Addendum to the PSR, set forth again below:

| | |
|---|---:|
| Base Offense Level<br>(U.S.S.G. §§ 2X1.1(a), 2C1.1(a)(1)) | 14 |
| Offense Involved More Than One Bribe<br>(U.S.S.G. § 2C1.1(b)(1)) | +2 |
| Defendant Was a Public Official in a Sensitive Position<br>(U.S.S.G. § 2C1.1(b)(3)) | +4 |
| Acceptance of Responsibility<br>(U.S.S.G. §§ 3E1.1(a) and (b)) | <u>-3</u> |
| Total: | <u>17</u> |

Based on a Criminal History Category of I, a total adjusted offense level of 17 results in an advisory Guidelines range of 24 to 30 months of imprisonment. PSR Sec. Add. ¶ 78.

III. Analysis

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted). Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [it] may not presume that the Guidelines range is reasonable. [It] must make an individualized assessment based on the facts presented." Id. at 50 (citation and footnote omitted).

Title 18, United States Code, Section 3553(a) provides that, in imposing sentence, the Court shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct; [and]
> >
> > (C) to protect the public from further crimes of the defendant.

"[I]n determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, [the Court] shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a).

It is well-settled that, at sentencing, "the court is virtually unfettered with respect to the information it may consider." United States v. Alexander, 860 F.2d 508, 513 (2d Cir. 1988). Indeed, Title 18, United States Code, Section 3661 expressly provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." Thus, the Court must first calculate the correct Guidelines range, and then apply the 3553(a) factors to arrive at an appropriate sentence, considering all relevant facts.

3

IV.     Discussion

The government respectfully submits that the Court should impose an incarceratory sentence because such a sentence is appropriate to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Such a sentence will both provide appropriate punishment for the "nature and circumstances of the offense" as well as further the aims of specific and general deterrence. See id. §§ 3553(a)(1), (a)(2)(B) & (a)(2)(C).



B.      Nature and Circumstances of the Offense, Respect for the Law and Just Punishment

The nature and circumstances of the defendant's offense are very serious. The defendant accepted bribes to circumvent NYPD procedures, risking the physical harm that the rules were designed to prevent. Specifically, law enforcement learned from numerous sources during the investigation that absent DARP rules, or when DARP is not followed, tow-truck drivers monitor police radio scanners and race to the scenes of local accidents, resulting in unsafe driving that often results in serious injury.

Moreover, the defendant committed crimes undermining public trust in law enforcement at a time in which the public's confidence in the police is particularly vulnerable. See Aimee Ortiz, "Confidence in Police Is at Record Low, Gallup Survey Finds," Aug. 12, 2020, N.Y. Times, available at https://www.nytimes.com/2020/08/12/us/gallup-poll-police.html. Without trust in the fair, evenhanded and uncorruptible pursuit of justice, the rule of law disintegrates. "The democratic acceptance of . . . effective but proportionate law enforcement [is among] the building blocks of trust and the single most important antidote against the violent expression of dissatisfaction, greed, and lust for power at the expense of other human beings." Ernst M.H. Hirsch Ballin, "Keynote Address," 110 Am. Soc'y Int'l L. Proc. 347, 349 (2016). When the law is administered even-handedly, tow truck drivers and others can proceed in their lives assured that they will be provided their just desserts. When law enforcement authorities trusted with enforcing the rules exhibit favoritism—here, by steering business to companies that provide kickbacks to the officers—the governed community has no reason to trust the system.

The defendant knew that what she was doing was seriously wrong. She met with her coconspirators in Individual No. 1's car, and she accepted her bribe payments through cash payments placed in a private UPS mailbox. PSR ¶ 8. Any NYPD officer, sworn to uphold the law, would feel acutely the criminality of the bribe scheme, particularly in light of the circumstances of the payments—the adrenaline-filled walk into a UPS store to pick up $500 to $1,000 in bribe payments. It is notable that, during this first meeting with Individual No. 1, when Smith told the defendant that she would make so much from the Tow Truck Scheme that she would feel guilty, the defendant replied that she would not feel guilty.

Nevertheless, the defendant persistently engaged in the same conduct, over a period of seven months. PSR First Add. She was not dissuaded by the feeling of walking through the UPS store to pick up a bribe, or by the meetings with Individual No. 1. She persistently chose herself, chose quick money, over her oath as a law enforcement officer.

Because this crime was serious and undermines the public's trust in the integrity of the law enforcement community of which the defendant was ostensibly a proud member, the just punishment for the offense must restore the public's faith in the evenhanded administration of justice, and must demonstrate that nobody is above the law.

C.     History and Characteristics of the Defendant

The history and characteristics of the defendant also justify an incarceratory sentence. See 18 U.S.C. § 3553(a)(1). The defendant's argument that her "criminal conviction [sic] is clearly aberrant conduct," Def. Ltr. at 5, see also Def. Ltr. at 19; ignores the nature of her crime—a months-long violation of her oath as an NYPD officer.

Whatever positive contributions to society she may have made, see Def. Ltr. 11-13, 27-29, these do not mitigate the criminal acts she committed while serving as a law enforcement officer. Indeed, far from being an exemplary police officer, the defendant failed in

5

her most basic duties as a law enforcement officer—to herself obey the law and to investigate and report crimes of which she became aware. When the defendant learned of Smith's participation in the Tow Truck Scheme and of his attempts to recruit her, she could have arrested him or reported him to Internal Affairs. Instead, she joined him as a cop turned criminal.

The defendant's history and characteristics also suggest that her crime was committed out of pure greed. Although she did not have a pressing need for the additional money, for thousands of dollars of kickbacks, she was willing to violate her oath to the benefit of a person with whom she had no real relationship.

### D. Avoiding Unwarranted Disparities

Moreover, an incarceratory sentence would help to avoid unwarranted disparities in sentencing. See 18 U.S.C. § 3553(a)(6). According to the latest statistics, for similar violations sentenced under Guidelines Section 3C1.1, two thirds received incarceratory sentences. The average and median sentences since 2016 are both 18-month terms of incarceration.[1]

### E. A Probationary Sentence Would Not Be Appropriate

There are no circumstances in this case that merit departure from the standard practice of imprisoning defendants who commit serious federal offenses, particularly here where those offenses are committed by would-be law enforcement officers and involve a shocking betrayal of public trust. In her sentencing submission, the defendant requests a non-incarceratory sentence, arguing that her family benefits from her presence at home and that she wants to be able to read to her children at night. Def. Ltr. at 14. But the Court regularly encounters criminal defendants who have pled guilty to serious crimes, many of whom have families who would prefer that their loved ones remain at liberty. The answer is not for the government and the courts to stop enforcing the law or punishing offenders, but for the offenders to refrain from committing serious federal crimes. The same is true here. The defendant's love for her family was not enough to prevent her corruption, and so it cannot be enough to prevent her incarceration.

---

[1] See U.S. Sentencing Commission Judiciary Sentencing Information, available at https://jsin.ussc.gov/analytics/saw.dll?Dashboard (accessed Feb. 8, 2022).

V.     <u>Conclusion</u>

       For the foregoing reasons, the government respectfully requests that the Court impose an incarceratory sentence that is sufficient, but not greater than necessary to achieve the goals of sentencing.

Respectfully submitted,

BREON PEACE
United States Attorney

By:   /s/
      Ryan C. Harris
      Nicholas J. Moscow
      Assistant U.S. Attorneys
      718-254-7000

cc:     Clerk of the Court (RPK) (by ECF)
       Peter Crusco, Esq. (Counsel to the defendant) (by ECF and e-mail)
       Steven Guttman, United States Probation Officer (by e-mail)